**25 Mag. 1898**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> MICHAEL GANN, <br><br> Defendant. | **COMPLAINT** <br><br> Violations of 26 U.S.C. §§ 5822, 5861(d), 5861(f), and 5871; and <br> 18 U.S.C. §§ 842(a) and 2 <br><br> COUNTY OF OFFENSE: <br> NEW YORK, NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

Christopher Hasson, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Unlawful Manufacture of a Destructive Device)

1.  In or about June 2025, in the Southern District of New York and elsewhere, MICHAEL GANN, the defendant, knowingly did make firearms, and did aid and abet the making of firearms, as defined in Title 26, United States Code, Sections 5845(a)(8) and 5845(f)(1), to wit, GANN manufactured a combination of parts designed and intended for use in converting a device into a destructive device from multiple precursor chemicals and materials.

(Title 26, United States Code, Sections 5822, 5861(f), and 5871; and Title 18, United States Code, Section 2.)

### COUNT TWO
### (Unlawful Possession of a Destructive Device)

2.  In or about June 2025, in the Southern District of New York and elsewhere, MICHAEL GANN, the defendant, unlawfully did knowingly possess a firearm, namely, a combination of parts designed and intended for use in converting a device into a destructive device, as described in Title 26, United States Code, Sections 5845(a)(8) and (f), not registered to the defendant, in the National Firearms Registration and Transfer Record.

(Title 26, United States Code, Section 5861(d).)

### COUNT THREE
### (Transportation of Explosive Materials)

3.  In on or about June 2025, in the Southern District of New York and elsewhere, MICHAEL GANN, the defendant, not being a licensee or permittee, under the provisions of Chapter 40 of Title 18 of the United States Code, knowingly transported and shipped, and caused

to be transported and shipped, explosive materials, in violation of Title 18, United States Code, Sections 842(a)(3)(A) and 844(a).

(Title 18, United States Code, Section 842(a).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI and a member of the FBI's New York-based Joint Terrorism Task Force ("JTTF"), and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and other people, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my personal involvement in this investigation, as well as my conversations with other law enforcement officers involved in the same, I have learned the following:

   a. A witness ("Witness-1") informed law enforcement that on or about June 4, 2025, MICHAEL GANN, the defendant, went to a particular location in Inwood, Nassau County, New York ("Location-1") looking for a package that he had ordered (the "Package").

   b. Witness-1 told law enforcement that the Package contained approximately two pounds of potassium perchlorate; approximately one pound of aluminum powder; approximately two bags of green cannon fuse; approximately one bag of red, white, and blue fuses; and hundreds of cardboard tubes. Based on my training and experience, potassium perchlorate and aluminum powder, when mixed together, can be used to create an explosive device if properly constructed.

   c. Witness-1 said that GANN mixed approximately a teaspoon-sized amount of potassium perchlorate and aluminum powder and applied a flame, causing an explosion approximately three feet by three feet in size (the "First Explosion").

   d. Witness-1 said that Witness-1 subsequently mixed approximately a teaspoon-sized amount of potassium perchlorate and aluminum powder and applied a flame, causing a second explosion approximately three feet by three feet in size (the "Second Explosion").

   e. According to a second witness ("Witness-2") present at Location-1, Witness-2 witnessed the Second Explosion and was blinded for approximately 15-20 seconds after viewing it.

   f. According to Witness-2, who is a United States military veteran, on or about June 4, 2025, *i.e.*, on the same day that GANN was mixing the above-described explosives, GANN said to Witness-2, in sum and substance, "What kind of veteran are you? You see a problem going on in the neighborhood and you do nothing about it." GANN then pointed to a Jewish school behind Location-1.

2

g. According to Witness-1, on or about June 4, 2025, GANN left Location-1 with a blue backpack, approximately seven grams of the potassium perchlorate and aluminum powder mixed together in a Tupperware-like container, cardboard tubes, and at least two shotgun shell casings that GANN stated he intended to glue to the exterior of a potassium perchlorate and aluminum device.

h. On or about June 5, 2025, law enforcement agents examined Location-1. At Location-1, law enforcement agents recovered, among other things, explosive residue in the vicinity of both the First Explosion and the Second Explosion.

i. On or about June 5, 2025, Witness-1 showed law enforcement agents Witness-1's text messages with GANN, in which GANN sent Witness-1, among other things, a hyperlink to a website about gun laws and multiple hyperlinks to websites selling explosive materials, pictured below:

  

3

j.  Based on my review of Website-1, I have learned that this website sells, among other things, cardboard tubes and various fuses consistent in appearance with those described by Witness-1, as well as potassium perchlorate. Some of the items for sale are pictured below:





k.  Based on my review of Website-2, I have learned that this website sells, among other things, aluminum powder. Some of the items for sale are pictured below:



l.  On or about June 5, 2025, at the direction and in the presence of law enforcement, Witness-1 placed a phone call to GANN. During their conversation, GANN stated, in sum and substance, that he had assembled six explosive devices; that he had lit one of the devices near the East River on the FDR Drive; that the device had exploded, scaring GANN; and that GANN was then considering disposing of the remaining five devices by throwing them into the water or turning them into the New York City Fire Department.

m.  On or about June 5, 2025, law enforcement agents observed GANN walking down the street carrying a shoulder bag. After law enforcement agents identified themselves,

GANN spontaneously uttered, in sum and substance, that he was on his way to FDNY to drop it off.

   n. Law enforcement agents placed GANN under arrest. While a law enforcement agent was handling GANN's bag, GANN spontaneously uttered, in sum and substance, that law enforcement should not light a match near GANN's bag because there could be a big fireball.

   o. Law enforcement conducted a search incident to arrest of GANN's bag and recovered, among other things, one object consistent in appearance with a homemade improvised explosive device ("Device-1"). Device-1 is pictured below:



   p. In addition, during the search of GANN's bag, law enforcement recovered, among other things, binoculars, a pocketknife, a torch lighter, and approximately four sharp edged tools.

   q. During a recorded, *Mirandized* post-arrest interview, GANN stated, in substance and in part, the following:

     i. GANN wished to make pyrotechnics and used artificial intelligence to learn which chemicals to purchase and mix.

     ii. GANN watched videos online of a man mixing chemicals and learned that perchlorates were the most dangerous in comparison to gun powder and black powder.

     iii. GANN ordered potassium perchlorate, aluminum powder, fuses, and tubes to be delivered to Location-1. GANN stated that purchasing the chemicals online was easier than buying gun powder.

iv. GANN and his friend—whom I believe to be Witness-1—mixed the chemicals in the garage of Location-1. GANN put the mixed powders into the tubes, secured them with end caps, and inserted fuses.

v. GANN left Location-1 with the bulk chemicals in a box and the homemade pyrotechnics.

vi. GANN called the supplier of the chemicals to try to return them, but the supplier declined. The supplier instructed GANN to put them in water or throw them out.

vii. GANN created four devices. GANN threw three devices from the Manhattan side of the Williamsburg Bridge. Two devices landed in the river, and one device landed on the train tracks. GANN kept one device in his pocket.

viii. GANN believed that he could have used BBs with the chemical powders if he really wanted to hurt someone. GANN assessed that BBs are too dangerous because they are made of steel.

ix. GANN had previously taken four shotgun shells from his friend's boiler room. GANN disposed of the aluminum powder, potassium perchlorate, and shotgun shells in a dumpster in Chelsea, Manhattan.

6. Based on my personal involvement in this investigation, as well as my conversations with other law enforcement officers involved in the same, I have learned that on or about June 5, 2025, law enforcement recovered a second device from the train tracks on the Williamsburg Bridge ("Device-2"). Device-2 contained a grey powder, consistent in appearance

with a mixture of potassium perchlorate and aluminum powder. Below is a photograph of Device-2 on the train tracks, with Device-2 circled in red:



7. According to criminal history records, I have learned that MICHAEL GANN, the defendant, has approximately 30 prior arrests, including 12 felony arrests, and approximately 27 total convictions, including three felony convictions.

8. Based on law enforcement agents' review of the Bureau of Alcohol, Tobacco, and Firearms' Federal Licensing System, I have learned that MICHAEL GANN, the defendant, is not licensed to possess or manufacture firearms or explosives.

WHEREFORE, I respectfully request that MICHAEL GANN, the defendant, be imprisoned or bailed, as the case may be.

*[signature]*
Christopher Hasson
Special Agent
Federal Bureau of Investigation

Sworn to before me on this 6th day of June, 2025

*[signature]*
HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York